UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-cr-237 (JRT)

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                 **GOVERNMENT'S SENTENCING POSITION**

DANIEL JOHN JANKE,

      Defendant.

Daniel John Janke—a longtime high school teacher with direct access to children—knowingly obtained, and then distributed to others, images and videos depicting the graphic sexual exploitation of children. Janke went out of his way to connect with other like-minded individuals on the Internet and eventually became a purveyor of CSAM material. These actions victimized *real* children. Also, despite his protestations, Janke's misconduct went well beyond merely trading images with others. The United States respectfully recommends that the Court impose a sentence of 120-months' imprisonment followed by a 7-year term of supervised release. Finally, given Janke's financial position, the government requests that the Court impose an uncontested $13,000 assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA) and a $5,000 assessment to the Justice for Victims of Trafficking Act (JVTA).

## **Janke's Criminal Conduct**

In October 2023, the FBI became concerned about a Kik[1] chatroom labelled "#daughdadreal" that appeared to attract individuals who sought to fetishize incestuous relationships between fathers and their daughters. The FBI opted to deploy an undercover agent into the chatroom to determine if the users in the group engaged in more than fantasized conversation. It became clear quickly that users in the chatroom actively solicited and traded child sexual abuse materials (CSAM). The undercover agent began communicating with members in the group. This included conversing with an individual using the vanity name "Jake Frost," which subsequently turned out to be a handle used by Janke to interact within the group.

Between October 23, 2023, and November 1, 2023, the undercover agent and "Jack Frost" engaged in numerous conversations. The undercover agent informed Janke that he had a 14-year-old daughter—a fictional ruse created to fit into the group dynamics—and reported he had sexually abused that minor daughter. Janke did not express shock at this purported abuse, and the pair instead turned to a discussion about their predilections. Janke reported that he liked them "a little older" and was more into the "teen" genre. Janke sent the undercover multiple videos of nude and semi-nude post-pubescent teenagers. This included sending one image of a female in her underwear that Janke reported was an image of one of his family members.

---

[1]   Kik is a free, mobile, messaging app that allows users to anonymously chat, share media, and explore content through private chats, community chatrooms, and live streaming.

On October 31, 2023, Janke sent the undercover agent CSAM material. This included at least three images of nude or semi-nude minors and one video of minor females exposing their genitalia and then performing oral sex on one another. Janke told the undercover that he believed the video depicted 15-year-olds engaging in oral sex. On November 1, 2023, Janke asked the undercover agent "Do I get to see your girl naked?" This was a direct request for CSAM material of the minor the undercover agent had previously indicated he had sexually abused. A subsequent forensic review of Janke's Kik account confirmed that Janke used the "Jack Frost" account to receive CSAM materials that he then distributed to other Kik users.

On February 6, 2024, law enforcement executed a search warrant on Janke's residence. Janke was cooperative during the execution of the search warrant and agreed to speak with law enforcement. Janke ultimately admitted that he had been receiving, viewing, and trading nude images of minors throughout the past year. He admitted that he tended to join Kik groups focused on "fantasy bull****." Janke adamantly denied using his position as a teacher to further his sexual fantasies. He admitted, however, to once setting up a hidden camera in his own home to capture video of barely legal female.

A subsequent review of Janke's electronic devices found further evidence of his Kik activities. Not only did law enforcement find further evidence that Janke collected and distribute CSAM materials, but it also discovered chats that Janke actively fantasized about engaging in sex acts with minors. Janke engaged in graphic sexual discussions that appeared tailored to his own sexual gratification and

admitted to achieving sexual satisfaction from his activities. These actions stand in stark contrast to Janke's repeated insistence that he engaged in this conduct for largely innocuous reasons.

On August 27, 2024, a grand jury returned an indictment charging Janke with distribution and receipt of child pornography. ECF No. 1. To his credit, Janke orientated quickly to the nature of these charges. On October 29, 2024, Janke entered his guilty plea and—cognizant of facing a mandatory minimum sentence—opted to immediately begin serving a portion of his prison sentence. *See* ECF Nos. 34-37.

## The Presentence Report

The government agrees with the facts and conclusions of the PSR, which resulted in an applicable Guidelines range of 210-240 months based on a total offense level of 37 and a criminal history category of I. (PSR ¶ 69.) The parties do not have any outstanding issues or objections to the PSR.

## The Appropriate Sentence

Janke has greatly minimized his own offense conduct, to the point that he apparently believes this is something that happened to *him*. He was lonely, wandered into Kik groups to socialize, and simply participated in what other users wanted to find connection. Janke's conduct demonstrated otherwise. Janke has not meaningfully grappled with his own sexual interest in children or correctly calibrated to the harm he caused. A significant custodial sentence is necessary to account for these harms. But the imposed sentence must also account for the fact that Janke did not produce child pornography, he immediately accepted responsibility for his

4

actions, and he has taken initial steps to understand his predilections in hopes of mitigating his likelihood of reoffending. The government respectfully recommends that a sentence of 120-months' imprisonment, a 7-year term of supervised release, and moderated financial assessments will achieve the broad goals of 18 U.S.C. § 3553(a).

1. Nature & Circumstances of Offense

The horrific nature of child pornography is unfortunately well documented. Those trafficking in images exploiting children exist in a community necessarily shrouded in secrecy. This community scrupulously protects its content and uses coded language to classify and categorize different forms of sexual abuse. This context is important, as it exemplifies that Janke did not stumble into this content by mistake. Instead, Janke sought out the right communities and then cleared every hurdle to gain trust, receive the most forbidden form of contraband, and remain a trusted purveyor. Janke attempts to disconnect from his conduct by attempting to label himself as a commodities trader. "Pictures I got came from one user and I would forward it to another user . . . I knew it was the content people wanted, and I forwarded it on to the next person . . . It is a character you take on. If this is what you want to talk about, this is what we will talk about." PSR at ¶ 21. It is alarming that Janke does not seem to grasp how dehumanizing such a characterization is to his victims.

The images and videos of CSAM that Janke thoughtlessly distributed to others ensures that his victims' most acute trauma will live on forever. To be clear, Janke

abused every child he watched, traded, and contacted. Survivors of child abuse and exploitation report higher rates of PTSD, suicide, anxiety, depression, eating disorders, and other disorders.[2] Sadly, these children rarely recover completely from the trauma of sexual abuse. A. Perry and D. DiLillo, *Child Sexual Abuse*, 147, in NA. Jackson, Encyclopedia of Domestic Violence, (2007). This fact is exemplified by the filed victim impact statement received from one of Janke's victims. The offense at hand is grave, it is extensive, and it requires serious punishment.

But Janke also did much more than simply collect and distribute child pornography. He actively engaged in a Kik community that focused on sexually fetishizing the relationship between parent and child. Janke provided a sympathetic outlet for apparent hands-on offenders to relive or workshop their abuse of children. Janke's conversation with the undercover agent exemplifies this conduct. After learning that the undercover officer had apparently engaged in the hands-on sexual abuse with a 14-year-old daughter, Janke asked when he could see that daughter naked. These conversations also provided an outlet for Janke to fantasize about his own dreams of engaging in hands-on sexual abuse of minors. This is obviously alarming for an individual who had daily access to minor children. Janke's admitted installation of a hidden camera in his home demonstrates the potentially accelerating

---

[2] *See, e.g.*, Molnar, B. E., Berkman, L. F., & Buka, S. L., *Psychopathology, childhood sexual abuse and other childhood adversities: Relative links to subsequent suicidal behaviour in the US*, Psychol. Med., 31, 965–77 (2001); Paolucci, E. O., Genuis, M. L., & Violato, C., *A meta-analysis of the published research on the effects of child sexual abuse*, J. of Psychol., 135(1), 17–36 (2001); Putnam, F. W., *Ten-year research update review: Child sexual abuse*, J. Am. Acad. of Child and Adolescent Psych., 42(3) (2003).

nature of his misconduct. It was within the confines of this trusted online community that Janke proved to be the most honest about his predilections and sexual interest in minors.

It is appropriate for the Court to consider the full range of Janke's conduct when it fashions the appropriate sentence. *See United States v. Anderson*, 926 F.3d 954, 958 (8th Cir. 2019) (explaining that uncharged conduct can be relevant to fashioning an appropriate sentence); *see also United States v. Mack*, 452 F.3d 744, 745-46 (8th Cir. 2006) (holding that, in sentencing defendant for sexual abuse of a minor, the sentencing court could consider the defendant's possession of child pornography even if the possession conduct was dismissed or uncharged). The Court should be leery of Janke's likely efforts to minimize his offense conduct by selectively focusing on isolated aspects of his actions.

2. History & Characteristics of the Defendant

Janke's unique history and characteristics do not meaningfully contextualize his actions. He benefited from a remarkably stable upbringing that was free of poverty, violence, or drug abuse. Janke is well-educated, participated in several extra-curricular activities during his youth, and successfully pursued higher education. Janke parlayed this background into a successful 31-year career as a high school teacher. It appears that Janke continues to benefit from the broad support of friends and family. It is clear, however, that Janke has experienced romantic challenges that resulted in loneliness. But it difficult to create a correlation between that loneliness and Janke's misconduct.

This is not to suggest that Janke has not engaged in meaningful conduct for which he deserves credit.  Janke immediately orientated to his charges, engaged with the government in resolution discussions, and opted to enter a guilty plea.  His quick resolution is important to his victims as it does not prolong their pain or require reliving their experiences through testimony.  He also completed a fulsome psychosexual evaluation and appears genuinely motivated to better understand his offense conduct.  His written statement accepting responsibility appears genuine, but also somewhat misses the mark.  "The saddest thing about my future being destroyed [is that] I did not watch half the videos I was being sent." PSR at ¶ 21.  Such a sentiment misses the mark.  Although Janke clearly regrets the familial and reputational harm that resulted from his actions, it is imperative that he eventually grapples with the how his misconduct forever affected his victims.

3. Need for Deterrence

Deterrence is an important aspect of criminal sentencing, especially in the context of crimes against children.  A significant sentence of 120 months is warranted here to effectuate both specific and general deterrence.  As discussed above, Janke has ground to cover to fully understand the scope of own offense conduct.  A longitudinal study of 341 offenders found that for individuals who viewed deviant pornography—as Janke did—the odds of sexual recidivism increased by 233% when compared against those who did not view such pornography. Kingston, et al., *Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders*, 34 Aggressive Behavior

341, 348 (2008). A significant sentence is imperative to mitigate these risks and to deter Janke from reoffending. A similar calculus applies to the tenets of general deterrence. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (explaining the importance of severe criminal sanctions in child exploitation matters in hopes of "dry[ing] up the market."). Finally, a 120-month sentence would not create any unwarranted disparities. *See, e.g.*, U.S. Sentencing Comm., *Federal Sentencing of Child Pornography: Non-Production Offenses* 21 (June 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf at 27 (finding that a 103-month sentence represented the average for non-production defendants when combining distribution, receipt, and possession-based offenses).[3] Janke certainly warrants more than the average sentence in this area given the unique position of trust he held as a high school teacher with access to minors.

4. <u>Financial Assessments</u>

Although restitution in this matter is mandatory, the government has not received and restitution requests despite notifying the victims of Janke's conduct. Instead, absent a finding of indigence, Janke is subject to assessments that generally benefit victims of child pornography offenses. PSR ¶¶ 80-81. The government maintains that moderated assessments are appropriate in this matter. This is especially true given Janke's long and successful career and ability to build

---

[3] The government acknowledges that there are myriad statistics in this area, but it maintains that its requested sentence would not create any unwarranted disparities given Janke's unique offense conduct.

9

retirement income. PSR ¶¶ 64-68. The government respectfully requests that the Court order a $13,000 assessment pursuant to the AVAA and a $5,000 assessment to the JVTA. These assessments do not appear unduly burdensome when compared against Janke's net worth. Janke has advised the government that he agrees the imposition of these assessments.

## Conclusion

For all these reasons, the government respectfully submits that a 120-month sentence, a 7-year term of supervised release, and $18,000 in total assessments split between the AVAA and JVTA fully comports with the United States Sentencing Guidelines and the goals of Title 18, United States Code, Section 3553(a).

Dated: March 28, 2025                Respectfully Submitted,

                                     LISA D. KIRKPATRICK
                                     Acting United States Attorney

                                     */s/ Jordan L. Sing*

                                     JORDAN L. SING
                                     Assistant United States Attorney