UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

| | |
|---|---|
| United States,<br>    Plaintiff,<br>v.<br><br>Daniel Janke,<br>    Defendant. | CRIMINAL DIVISION<br><br><br><br>Court File No. <u>24-CR-237 (JRT)</u> |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Mr. Janke, pursuant to <u>United States v. Booker,</u> 125 S.Ct. 738 (2005) and 18 U.S.C. § 3553(a), respectfully requests that this honorable court impose a reasonable sentence taking into account all the factors set forth in the sentencing statute, § 3553(a).

**I.   SENTENCING REQUEST**

Defendant moves this Court for a reasonable sentence, taking into account the factors detailed in the sentencing statute, 18 U.S.C. § 3553(a), as described more fully below. We suggest that a mandatory minimum sentence (60 months, minus credit for time served) with a period of conditional release, and a fine of $100 plus the special assessment, coupled with restitution, would be reasonable as explained below. Defendant has not received any information indicating that any victims are seeking restitution.

The PSR, however, calculated a guidelines range of 210 to 262 months, adjusted to 210 to 240 months (17.5 to 20 years)since the maximum sentence is 240 months. **See** PSR at 13.

## II.   LEGAL STANDARD

As this Court is aware, after United States v. Booker, federal district courts have considerably more discretion than before Booker to fashion an appropriate sentence tailored to the individual characteristics of the particular defendant appearing before the Court. As this Court is aware, under Booker, the United States Sentencing guidelines are now merely "advisory." See Booker, 125 S.Ct. at 757. Moreover, in imposing a sentence sentencing courts are required to consider all the factors listed in 18 U.S.C. § 3553(a) in imposing a sentence. See id.

The prime directive in § 3553(a) is that the court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes of sentencing." See 18 U.S.C. § 3553(a) (emphasis added). Those purposes include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment;
- to create adequate deterrence
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary treatment and training

The sentencing statute also directs sentencing courts to consider a number of other factors including:

- the nature and circumstances of the offense, § 3553(a)(1)
- the history and characteristics of the defendant, Id. (2)
- the kinds of sentences available, Id. (3)
- the sentencing guidelines range, Id. (4)
- pertinent Sentencing Commission policy statements, Id. (5)
- the need to avoid unwarranted sentencing disparities, Id. (6)
- the need to provide restitution to any victims of the offense Id. (7)

As Booker emphasized, under the Sentencing Reform Act, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for purposes of imposing an appropriate sentence." Booker, 125 S.Ct. at 760 (quoting 18 U.S.C. § 3661). After Booker, courts are therefore **required** to consider a number of factors which the guidelines **discouraged**, **rejected**, or **refused** to consider at all.

**HERE**, the Sentencing Guidelines call for a sentence range of **210 to 240 months (17.5 to 20 years)**. The statutory maximum sentence is 20 years.

The guidelines range is but one factor, however, and is **not to be presumed by the sentencing court to be a reasonable sentence**, as the Supreme Court has emphasized. See, e.g., Nelson v. United States, 129 S.Ct. 890, 892 (2009) (sentencing court may not presume that guidelines sentence is reasonable); Moore

3

v. United States, 129 S.Ct. 4, 5 (2008) (sentencing judge has discretion to ignore the crack to powder cocaine ratio in the Sentencing Guidelines); Kimbrough v. United States, 128 S.Ct. 558, 573-76 (2007) (same).

### III. DEFENDANT'S FAMILY NEEDS

Mr. Janke is 55 years old and single. He has two adult children. At the time of this offense, he was living with his then-wife Melissa. After Mr. Janke was arrested on this offense, the couple divorced, but they remain close.

Mr. Janke has several relatives and friends who wrote letters for this case to the Court including (1) his parents, (2) his ex-wife Melanie Meyer, (3) his son Matthew, (4) his pastor Tim Anderson, (5) his friend Anne-Lise Hustad Johnson, and (6) his brother Thomas Janke. Defendant Mr. Janke has also written a letter to the Court himself.

### IV. MR. JANKE'S INDIVIDUAL CHARACTERISTICS & MEDICAL CONDITIONS.

Mr. Janke is 55 years old. He is not married. He has two adult children. He does not have a significant other. He was born in North Dakota and grew up there.

He has never been convicted of any crimes before the instant offense. See PSR at 5.

Regarding the instant offense, Mr. Janke voluntarily submitted to a psycho-sexual evaluation with Dr. Alsdurf (see PACER Doc. #55). Sex offender treatment was recommended. See Psycho-Sexual Eval. (PSE) at 10. The Psycho-sexual evaluation concluded that Mr. Janke is not a threat to public safety and is not a danger to re-offend. PSE at 9-10. **The Psycho-Sexual Evaluation also opined that Mr.**

4

**Janke is at a low risk for re-offending. Dr. Alsdurf noted that 97 % of persons convicted of possession/distribution of child pornography committed no child contact offenses within 5 years after conviction. PSE at 9. Similarly, 91% of such offenders had no new offenses for possession/distribution of child pornography within 5 years after sentencing. Id.**

**The Evaluation also failed to conclude that Mr. Janke is a pedophile. Id.**

### V.   ABILITY TO PAY FINES.

**The PSI correctly concluded that Mr. Janke lacks the ability to pay a guidelines fine in the guidelines range** of $40,000 to $250,000. See PSR at 14, para. 82. When the PSR was written, Mr. Janke <u>had</u> zero in the bank, and still has zero. He has no liabilities and no assets (except his retirement fund). He has no non-retirement assets, and no liquid assets. His TRA, teachers retirement account, is value at roughly $250,000. That is a non-liquid asset of course.

Moreover, if he withdraws any of the money now to pay a fine or restitution, he will pay a steep tax penalty of roughly 30%. <u>Moreover, when he is released, he will be at least 60 years old. At this point, he will largely unemployable</u>. He will certainly not be able to go back to his previous 30-year teaching career. When he is released, he will not own a home or any other assets, and will have been unemployed for at least five years. Thus, he will need his retirement money to live on.

The Court, and presumably the Government, would prefer that Mr. Janke put his limited funds toward **restitution** rather than towards paying fines. <u>Minimum restitution set by law is $18,000 ($3000 each times six identified victims)</u>. However,

no victims have sought restitution. **Therefore, the Government and Mr. Janke agree that no restitution should be ordered.**

<u>Although we assert that the "mandatory" assessment of $5000 under 18 U.S.C. 3014 does not apply in this case because *Mr. Janke is functionally indigent*</u> (considering that he is unemployed, does not own a car or a house, and will need some money to live on when released from custody since he will have a very hard time getting a job with a federal felony conviction for possession/distribution of child pornography on his record **and has no non-retirement assets**<u>), we would agree with the government that because no restitution is sought, the Court should impose a $5000 assessment under Section 3014</u>.  <u>See</u> PSR at 12, paras. 79-81.  In addition, another assessment of up to $35,000 applies under 18 U.S.C. 2259A. PSR at 14, para. 81. <u>We agree with the government that if no restitution is sought, Mr. Janke should pay a $13,000 assessment under Sec. 2259A. This makes a total of $18,000 in special assessment ($5000 plus $13,000).</u>

VI.   **MR. JANKE'S EDUCATION & EMPLOYMENT HISTORY**

Mr. Janke graduated from Fargo High School in 1988. He then graduated from Moorhead State University in 1993 with a degree in Art. PSR at 11.

**<u>Mr. Janke has a long work history of gainful employment.</u>** He worked as a teacher for the New Ulm and Sleepy Eye school districts for roughly 31 years from 1993 to 2024. <u>See</u> PSR at 12.  He also worked as a part-time golf coach at Martin Luther College (for 3 seasons) and for the New Ulm School District (for 27 years). He is unemployed now only because of this offense and resulting detention. Id.

6

Mr. Janke never served in the military. He has never been fired from a job or accused of employment misconduct. Id.

### VII. NATURE AND CIRCUMSTANCES OF THE OFFENSE

On 6-8-17 a search warrant was executed at the home where Mr. Janke was living with his then-wife. <u>See</u> **Indictment**; PSR at 2-3. The search warrant was issued because under-cover law enforcement officers had received illegal images from Mr. Janke (child pornography of pubescent minors) through the KIK platform. <u>See</u> PSR at 2 to 3 (para. 12). Only 13 images and 4 videos were retrieved from Mr. Janke's KIK account pursuant to search warrant served on KIK. PSR at 3 (para. 16).

After the search warrant was executed, and on the same day, Mr. Janke was questioned at his home where the search warrant was executed. Mr. Janke admitted the offense to law enforcement when questioned that same day that the search warrant was executed. Moreover, he has taken responsibility for this offense by pleading guilty and admitting his culpability and remorse in a statement provided to Probation and another statement provided to the Court.

**The question then remains, why did he commit the offense?** The only answer is a <u>reason,</u> but not an <u>excuse,</u> legal or otherwise. He obviously suffers from anxiety and depression.

**Regardless of the reasons for his actions, it is a crime, and he must pay a price**. He has already paid a price, of course. He has been extremely stressed and anxious during the pendency of this case, which is since February **2024** when the search warrant was executed (over 13 months ago). The government then took

7

roughly six months to charge him. See Indictment (filed 8-27-2024). All during that period of **six months** between when the search warrant was served and when he was charged, he did not know if he would be charged in state court or federal court, or what he would be charged with, including a possible charge carrying a lengthy mandatory minimum sentence of several years.

## VIII. ACCEPTANCE OF RESPONSIBILITY

Mr. Janke has accepted responsibility. He pleaded guilty. He has also admitted his conduct to parents, siblings, etc. (**See** attached letters of support from family members.) He admitted the offense from the get-go when the FBI questioned him on the day the search warrant was executed. And he admitted the offense by pleading guilty. And he admitted the offense and the details in his statement to Probation. **In sum, he has accepted responsibility and is deserving of a three point reduction for acceptance of responsibility, consistent with the PSR. See PSR at 6-7.**

## IX. ACCORDING TO A RANGE OF FEDERAL JURISTS AND COMMENTATORS, A GUIDELINES SENTENCE IS NOT APPROPRIATE IN THIS OR OTHER SIMILAR CASES.

Many jurists and commentators have come to the conclusion that, because the Sentencing Guidelines Commission did not apply its expertise in setting the guidelines sentence, including enhancements, for the instant offense, a guidelines sentence is due no deference whatsoever in child pornography cases.[1] In addition,

---

[1] See, e.g., United States . Dorvvee, 616 F3rd 174, 186 (2nd Cir. 2010) (rejecting as unreasonable a Guidelines sentence of 233 months for a first-time offender who

Judge Tunheim of this Court, among others, has reached a similar conclusion in previous cases, such as in the **attached** sentencing memorandum in the case of United States v. Anthony Munoz, File # CR 11-167 (sentencing mem. Oct. 30, 2012).

For example, former Senator Arlen Specter of Pennsylvania wrote about the fact that Congress has repeatedly interfered with the Commission and overruled its work, in a virtually unprecedented fashion, in setting the Guidelines sentence and enhancing factors for child pornography offenses by legislative fiat rather than through the Commission's expertise. See The Champion October 2011 at 12, "A Quiet But Growing Judicial Rebellion Against Harsh Sentences For Child Pornography Offenses— Should the Laws Be Changed?" October 2011 at 12 (available at https://www.nacdl.org/Champion.aspx?id=22897). Senator Specter and his co-author note that Congress has increased the penalties for child pornography **nine times** since 1987 and each time mandated harsher penalties. During the time period studied, the base offense level for possession offenses, had risen from **10 to 18**, while the base offense level for distribution and other offenses

---

posed little or no threat to children and had never committed sexual misconduct); United States v. Bennett, 8;07-CR-235 (D. Neb. May 30, 2008) (sentencing mem.) available at http://sentencing.typepad.com/sentencing_law_and_policy/files/bennett_sentencing_opinon.pdf (concluding that guidelines sentences for pornography offenses were dictated by Congress and therefore were a departure from past practices of the Commission where sentences were usually based on "empirical data and national experience, guided by a professional staff with appropriate expertise" and thus a Guidelines sentence may be greater than necessary to carry out the statutory purposes of sentencing) (cited by Stabenow at 38).

9

has risen from **13 to 22**. See generally U.S. Sentencing Commission, The History of the Child Pornography Guidelines (Oct. 2009), available at https://www.ussc.gov/research/research-reports/2009-history-child-pornography-guidelines.

Moreover, there is the problem that many sentencing enhancements for pornography in the Guidelines apply to virtually all cases. **For example, in THIS case, the PSR reports that Mr. Janke' sentence under the Guidelines should be enhanced**:

**(1)** two levels because the material involved children under 12 (prepubescent minors);

**(2)** four levels for sadistic or masochistic images;

**(3)** two levels for use of a computer to possess the material; and

**(4) five levels** for possessing more than 600 (converted number of) images[2]. See PSR at 7.

**Because all of these factors are "obviously" present in most or all cases**, as many federal judges have found, these enhancements are duplicate and irrational. In addition, it is not just defense counsel undersigned stating that it is "obvious" that

---

[2] As the PSR notes, Mr. Janke did **not** actually possess or distribute over 600 images. The PSR notes, and the evidence shows, that Mr. Janke possessed 4 photos and 14 videos (for a total of 18). Under the Guidelines, however, each video counts as 75 images for purposes of sentencing. Thus the Guidelines consider him to have possessed an "imaginary" number of 1054 total images, which is roughly 75 times higher that the number of photos and videos combined that he possessed. ***In addition, Mr. Janke in fact deleted these ALL or almost all of these videos and photos from his phone.*** However, the images were captured by the Government pursuant to a subpoena served on KIK's computer servers.

most people use a computer to possess child pornography, etc. Indeed, the Second Circuit and a study by the USSGC found that these enhancement apply to **most** cases. See United States v. Dorvee, 616 F.3rd 174, 186 (2nd Cir. 2010); U.S. Sentencing Commission's Guidelines Application Frequencies for Fiscal Year 2010, Use of Guidelines and Specific Offense Characteristics, at 37, available at https://www.ussc.gov/research/data-reports/guideline/2010-guideline-application-frequencies (hereinafter "Study").

Specifically, the Guidelines Commission's study found that:

§ 2G2.2(b)(2) enhancement for victim under the age of 12 (2 levels) applied in **95.6 percent of cases**;

§ 2G2.2(b)(4) enhancement for sadistic or masochistic conduct or other forms of violence (4 levels) **applied in 73.6 percent of cases**;

§ 2G2.2(b)(6) enhancement for use of a computer (2 levels) applied in **96.2** percent of cases; **and**

§ 2G2.2(b)(7)(D) enhancement for 600 images or more (5 levels) applied in **66.9** percent of cases.

**See Study at 37.**

**For the above reasons, amongst others, many courts have correctly concluded that when applied to the instant type of offense the Sentencing Guidelines are *irrational*.** See, e.g., Dorvee, 616 F3rd at 186 (2nd Cir.); United States v. Diaz, 720 F.Supp. 2d 1039, 1041-42 (E.D. Wisc. 2010) (listing child pornography cases wherein courts declined to apply Guidelines); United States v. Kelly, 868 F.Supp.2d 1202, 1211 (D.N.M. 2012) (defendant received and downloaded 580 images of child pornography; "advisory Guideline sentence of 87 to 108 months imprisonment is far greater than necessary to punish and deter his

11

conduct and protect the public. This is largely due to serious flaws in U.S.S.G. § 2G2.2, which was not drafted pursuant to the Sentencing Commission's usual expertise, and all too frequently generates unjustly excessive terms of incarceration."); United States v. Marshall, 870 F.Supp.2d 489, 491–92 (N.D.Ohio 2012) ("In effect, the Guidelines presume that those who view child pornography are indistinguishable from those who actually abuse children."); United States v. Stark, No. 10–CR–270, 2011 WL 555437, at *7 (D.Neb. Feb. 8, 2011) (650,000 images of child erotica; "[T]he child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method.."); United States v. Price, No. 09–CR–30107, 2012 WL 966971, at *12 (C.D. Ill. Mar. 21, 2012) ( "[C]hild pornography crimes fall within a spectrum.... This Court finds that a below-Guideline sentence is needed in this case in order to avoid unwarranted sentencing disparities but also to avoid unwarranted sentencing similarities among defendants convicted of dissimilar conduct."); United States v. Cameron, No. 09–CR–00024, 2011 WL 890502, at *4 (D.Me. Mar. 11, 2011) (**"[Defendant] is subject to nearly a ten-fold greater punishment for possessing images of someone else sexually abusing a minor than he would receive if he had committed the actual abuse himself.");** United States v. Beiermann, 599 F.Supp.2d 1087, 1105 (N.D.Iowa 2009) ( "This guideline, thus, blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment.... The sentencing court must consider the need to avoid unwarranted similarities among defendants who are not similarly situated, as well as unwarranted disparities among

12

defendants who are similarly situated."); United States v. Cruikshank, 667 F.Supp.2d 697, 702 (S.D.W.Va. 2009) (defendant convicted of possessing or knowingly accessing with intent to view child pornography; "In an instance of troubling irony, an individual who, sitting alone, obtained images of sexually exploited children on his computer, could receive a higher sentence than the Guidelines would recommend for an offender who actually rapes a child."); United States v. Burns, No. 07–CR–556, 2009 WL 3617448, at *7–8 (N.D.Ill. Oct. 27, 2009) (defendant was convicted on two counts of receiving and distributing child pornography with a "relatively small collection of illegal images"; sentenced to 72 months, below Guidelines' range of 235–293 months); United States v. Meysenburg, No. 08–CR–361, 2009 WL 2948554, at *8 (D.Neb. Sept. 11, 2009); United States v. Johnson, 588 F.Supp.2d 997, 1004–07 (S.D.Iowa 2008) (refusing to "give too much weight to the sentencing guidelines, given their lack of empirical support" and finding that a sentence well below the Guidelines range was warranted); United States v. Grober, 595 F.Supp.2d 382, 393 (D.N.J.2008), aff'd, 624 F.3d 592 (3d Cir.2010) (defendant convicted of downloading 1500 images and 200 videos of child pornography; "§ 2G2.2 leads to a sentence that is too severe in a downloading case").

As a result of the irrationality of the Guidelines for possession only cases where a guidelines sentence may be greater than a sentence for someone who actually physically abused a child, **some courts have imposed sentences from one day jail to one year of home confinement for possession offenses.** See, e.g., United States v. Connelly, Crim. No. 07-830 (D.N.J. Jan. 12, 2009) (12 months home

13

confinement for a possession offense); United States v. Hapgood, Crim. No. 09-293 (D. N.J. May 25, 2010) **(one day confinement for possession).**

    **X.    AS NOTED ABOVE, THERE IS A TREND IN FEDERAL COURT TO GRANT VARIANCES AND TIME SERVED ON POSSESSION CASES.**

Judge Weinstein of the Eastern District of New York, amongst others, has written about the inapplicability of the Guidelines to possession of child pornography cases, as opposed to cases of production, or actual physical sexual abuse. See United States v. R.V., 157 F.Supp. 3d 207, 260 (E.D.N.Y. 2016). As noted above, he and other commentators and jurists have noted an **increasing trend** of imposing variances and sentences of time served on such cases. He cites a survey of federal judges where 70% of the federal judges concluded that the Guidelines sentences for possession of child pornography were unduly long. See U.S. Sentencing Comm'n Results of Survey of U.S. District Judges Jan. 2010 to March 2010 (June 2010) at 13 (see Table of Survey results produced in R.V., 157 F.Supp. 3d at 261).

**Numerous federal judges have sentenced defendants to time served or similar sentences in cases of possession only.**[3] For example: D.M., 942 F.Supp.2d at 352; United States v. Autery, 555 F.3d 864, 867 (9th Cir. 2009) (affirming non-

---

[3] The cases cited below are apparently sentencing "ordinary" defendants, and thus do NOT take into account the fact that Mr. Janke possessed a *very* low number of photos/videos found on his phone (no images remained on this phone, but 18 combined videos and photos were found on KIK's servers pursuant to subpoena) which is far below the number of images found on devices of defendants (typically thousands) typically prosecuted in federal court.

14

Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); United States v. Stall, 581 F.3d 276, 277–78 (6th Cir. 2009) (affirming non-Guidelines sentence of one day of incarceration and ten-year period of supervised release); United States v. Prisel, 316 Fed.Appx. 377, 378 (6th Cir. 2008) (affirming non-Guidelines sentence of one day in prison followed by eighteen months of home confinement for possession of child pornography); United States v. Rowan, 530 F.3d 379, 380 (5th Cir. 2008) (affirming non-Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); United States v. Polito, 215 Fed.Appx. 354, 355 (5th Cir. 2007) (per curiam) (affirming non-Guidelines sentence of five years of probation with one year of house arrest for possession of child pornography); United States v. Crespo–Rios, No. 08–CR–208, 2015 WL 6394256, *1 (D. P.R., Oct. 19, 2015) (holding "that resentencing Defendant to the same sentence—that is, time served followed by a long period of supervised release—is justified in view of each of the sentencing factors outlined in 18 U.S.C. § 3553"); United States v. Mallatt, No. 13–CR–3005, 2013 WL 6196946, at *13 (D. Neb. Nov. 27, 2013) ("sentence of time served, followed by six years of supervision with special conditions including intensive treatment is adequate to fulfill the goals of sentencing in this case"); United States v. Diaz, 720 F.Supp.2d 1039, 1048 (E.D.Wis.2010) (imposing non-Guidelines sentence of six months of incarceration followed by twelve years' supervised release); United States v. Meillier, 650 F.Supp.2d 887, 887 (D. Minn. 2009) (imposing non-Guidelines sentence of one day of **\*265** confinement followed by thirty years of supervised

15

release); United States v. Boyden, No. 06–CR–20243, 2007 WL 1725402, at *10 (E.D. Mich. June 14, 2007) (imposing non-Guidelines sentence of one day of confinement followed by three years of supervised release, the first year of which to be served in a community correctional facility); Judgment in a Criminal Case, *United States v. Evren*, No. 10–CR–131 (E.D.N.Y. Feb. 26, 2013) (ECF No. 59) (imposing non-Guidelines sentence of three years of probation for defendant who pleaded guilty to one count of possession of child pornography); see also United States v. Morace, 594 F.3d 340, 351 n. 10 (4th Cir. 2010) (noting "that some district courts have begun sentencing defendants convicted of possessing child pornography to one day of incarceration followed by a term of supervised release") (cited in R.V.,157 F.Supp. 3d at 264-65).

Because Mr. Janke and has been confined to the Sherburne County Jail for at least six months or 180 days (as of the date of sentencing) and because he plead guilty to an offense carry a mandatory minimum sentence of 60 months, it is appropriate under Section 3553(a) to sentence him to 60 months minus time served and a five to ten years of supervised release.[4]

### XI. MR. JANKE'S CASE IS NOT ONE **TYPICALLY** CHARGED IN **FEDERAL** COURT, BASED ON THE PARTICULAR FACTS

---

[4] By way of comparison, it would grossly disproportionate to sentence Mr. Janke to a Guidelines sentence of 17.5 to 20 years, or to 10 years (120 months) as the government suggests. Former North Dakota State Senator Holmberg was just sentenced this week in federal court in the District of North Dakota for the crime of travelling in interstate commerce to have sex with underage boys for money is Prague, Czech Republic. He received a sentence of **only 10 years** for repeatedly having sex with underage prostitutes, while Mr. Janke is not accused of touching anyone. See https://www.justice.gov/usao-nd/pr/former-north-dakota-state-senator-sentenced-10-years-imprisonment-traveling-prague

**OF HIS OFFENSE, AND HE WOULD GET A PROBATIONARY OR NON-PRISON SENTENCE FOR THIS OFFENSE IN STATE COURT.**

Counsel undersigned has represented 36 or more defendants in Minnesota <u>**state court**</u> on charges of possession of child pornography (we counted). Some defendants were charged with possession and distribution, or possession and other crimes. As an officer of the Court, I can tell the court that every single one of those <u>state court</u> defendants who plead guilty and thus did not go to trial, except for one who had a prior conviction for sexually touching a minor and one with a prior conviction for possession of child pornography, was sentenced to a probationary non-prison sentence.

The *average* defendant charged with <u>possession</u> of child pornography, who <u>pleads guilty</u> to no more than four counts (i.e. does not go to trial), and has a zero criminal history score, would be sentenced to 30 months stayed, with a typical incarceration period of 60 to 120 days in jail or house arrest (EHM). That is the sentence for an "average" defendant, ***not someone like Mr. Janke*** who erased all or almost all of the illegal files on his phone (no illegal mages were found on his phone, but they were retrieved from KIK from the company's servers).

### XII. BECAUSE MR. JANKE HAS CAUSED A TINY FRACTION OF THE HARM SUFFERED BY THE VICTIMS, AND HIS ABILITY TO PAY IS LIMITED, RESTITUTION SHOULD BE LIMITED AND PROPORTIONATE.

17

<u>No claims for restitution have been submitted to defense counsel</u>. If any are submitted in the future, any restitution would have to apportion the injury to the victims versus Mr. Janke's role in causing that injury, which would be extremely complicated, expensive, time-consuming, and speculative, to say the least. Also, any restitution award would have to take account of all restitution already granted to the victims in other cases. The injury to the victims is doubtless substantial and long-lasting. Mr. Janke's **<u>part</u>** in that injury cannot reasonably be said to be anything other than extremely small.

While the parties are trying to reach an agreement regarding restitution, if no restitution agreement is reached, the **<u>Paroline</u>**[5] factors indicate that Mr. Janke should be ordered to pay a relatively small amount of restitution. **In similar cases, defendants have often been ordered to pay $1000 to $3000 per victim.**[6] (Federal law has increased the minimum amount of restitution for each victim in the last few years from $1000 to $3000.) In the instant case, an award of $3000 per victim or $18,000 would be reasonable.

---

[5] **<u>See</u>** <u>Paroline v. United States</u>, 134 S.Ct. 1710 (2014).
[6] <u>See</u>, e.g., <u>U.S. v. Schultz</u>; <u>United States v. Darbasie</u> (1st Cir. 2016) ($2000 awarded to "Vicky" and $3000 awarded to "Cindy" in case with possession and no distribution or reproduction); <u>United States v. Hanlon</u> (11th Cir. 2015) (restitution denied to Vickie and Marineland victim); <u>United States v. Hite</u> (4th Cir. 2015) ("8 Kids" victims awarded $2500 each); <u>United States v. Hernandez</u>, ("Vicky" awarded $2282); <u>United States v. Reddick</u> (11th Cir. 2018) ("8 Kids" victims agreed to settled restitution of $1500 per victim after sentencing hearing).

18

## XIII.  LETTERS OF SUPPORT

Mr. Janke has obtained letters of support from friends and relatives, including his brother Thomas Janke, his pastor Tim Anderson, his parents, his friend Anne-Lise Hustad Johnson, his ex-wife Melanie, and his son Matthew.

The letters speak for themselves, but it is worth noting something about them. The writers all say that Mr. Janke's offense behavior is ***inconsistent*** with his general conduct. They note that he was a good friend, an obedient child, and a loving son, and a good teacher who supported the community. They note that he should be punished, but his life should not be destroyed.

## CONCLUSION

Mr. Janke is 55 years old with no prior convictions. Until this offense, he had done nothing wrong. He also did nothing wrong for the six months after the search warrant was executed until he was indicted. He has no assets other than his retirement account and will not be able to work in his previous lines of work of teaching and coaching once released.

For all the foregoing reasons, Mr. Janke, his family, and society would be well-served by a sentence no greater than the mandatory minimum of 60 months, minus time served, with a period of supervised release.

Respectfully submitted,

Dated: 3-28-2025                    **KELLER LAW OFFICES**


**/s/Max A. Keller, MN Atty #278816**
Attorney for Defendant
KELLER LAW OFFICES
310 Fourth Ave. South #1130
Flour Exchange Bldg.
Minneapolis MN 55415
Ph. 952-913-1421
Max@KellerLawOffices.com